**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.          1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK          ★  SEP 13 2005  ★

--------------------------------          LONG ISLAND OFFICE
                                      )
In The Matter of                      )
                                      )   Criminal Case No.
UNITED STATES OF AMERICA,             )   2:04-cr-00455-ADS-9
                                      )
            Plaintiff,                )
                                      )
                                      )
PATRICK McFADDEN,                     )
                                      )
            Defendant.                )
                                      )
--------------------------------

                            United States District Court
                            Eastern District of New York
                            100 Federal Plaza
                            Central Islip, New York 11722

                            Thursday,
                            September 1, 2005

BEFORE:

        HON. JAMES ORENSTEIN,
        Magistrate Judge


APPEARANCES:

        LAW OFFICES OF TIMOTHY J. McINNIS
            Counsel for Defendant
        521 Fifth Avenue, Room 1700
        New York, New York  10175
        (212) 292-4573
            BY:  TIMOTHY J. McINNIS, ESQ.


        UNITED STATES DEPARTMENT OF JUSTICE
        UNITED STATES ATTORNEY'S OFFICE
        EASTERN DISTRICT OF NEW YORK
            Counsel for Plaintiff
        147 Pierrepont Street
        Brooklyn, New York  11201
        (718) 354-6317
            BY:  LAWRENCE P. FERAZANI, JR., ESQ.


**TANKOOS REPORTING CO., 142 Willis Avenue, Mineola, NY**
**(516) 741-5342      (212) 349-9692**

2

I N D E X

TESTIMONY

| WITNESS | EXAMINED BY | PAGE |
|---------|-------------|------|
| Patrick McFadden | The Court | 4 |


| EXHIBITS | DESCRIPTION | PAGE |
|----------|-------------|------|
| Court Exhibit 1 | Agreement | 18 |

1               P R O C E E D I N G S

2               THE COURT CLERK:   Calling case CR-04-455,

3     USA versus McFadden.

4               Counsel, please state your appearance for

5     the record.

6               MR. FERAZANI:   Lawrence Ferazani, on behalf

7     of the United States.  Good afternoon, Your Honor.

8               THE COURT:   Good afternoon, again.

9               MR. McINNIS:   Timothy J. McInnis, on behalf

10    of Patrick McFadden, who is here with me.

11              THE COURT:   Good afternoon.  Is it -- is it

12    McInnis?

13              MR. McINNIS:   Yes.

14              THE COURT:   Okay.  Good afternoon.

15              And, you're Mr. McFadden?

16              THE DEFENDANT:   Pat McFadden, Your Honor.

17              THE COURT:   All right.  Have -- have a

18    seat, please.

19              Mr. McFadden, we're here because I'm told

20    you wish to plead guilty to Count Three of the

21    indictment.

22              Is that correct?

23              THE DEFENDANT:   Yes, Your Honor.

24              THE COURT:   All right.  Now, I'm going to

25    have to explain a number of things to you, and I'm

4

1    going to have to ask you certain questions.  And, your

2    answers must all be truthful and under oath.

3         So, the first order of business is, if you

4    would please stand while Mrs. Savona swears you in.

5         Whereupon,

6                   PATRICK McFADDEN,

7         after first being duly sworn, was called as

8    a witness herein, and was examined and testified as

9    follows:

10                  EXAMINATION BY THE COURT

11             BY THE COURT:

12        Q    Have a seat, please.  And, you're going to

13   have to answer out loud.  Please try and speak so I

14   can hear you.  There is a microphone there, so that --

15   and, we're recording this.

16        And, Mr. McFadden, first of all, do you

17   understand that, having been sworn to tell the truth,

18   you must tell the truth.  And, if you were to

19   deliberately lie in response to any question that I

20   ask you, you could face further criminal charges for

21   perjury.

22        Do you understand that?

23        A    Yes, I do, Your Honor.

24        Q    All right.  If I say anything that you don't

25   understand, or if you need me to repeat anything, just

1    ask.  If you need some time to talk to your attorney,

2    take it.  I'll wait for you.  It's important that you

3    understand everything that goes on today.

4              Do you understand?

5        A    Yes, Your Honor.

6        Q    All right.  Now, I'm going to ask -- start

7    out by asking you some questions, to make sure that

8    you understand, you know, your surroundings, and that

9    you're competent to proceed.

10             So, tell me, please, how old are you?

11       A    Thirty-four.

12       Q    And how far did you get with your education?

13       A    The second year in college.

14       Q    And, are you presently, or have you recently

15   been under the care of a doctor or a psychiatrist for

16   any reason?

17       A    No, Your Honor.

18       Q    In the past twenty-four hours, have you

19   taken any pills, drugs, medications, or any kind of

20   alcoholic beverage?

21       A    I had a sleeping pill, last night.

22       Q    All right.  When did you take the sleeping

23   pill?

24       A    Eleven o'clock.

25       Q    All right.  Did you get a full night's

1    sleep?

2         A    No, Your Honor.  Well, a decent night.

3         Q    Well, I can certainly understand why you may

4    not.  What I need to know, really, is do you feel any

5    aftereffects of the sleeping pill?

6         A    No, Your Honor.

7         Q    All right.  Have you ever been hospitalized

8    or treated for any drug-related problem?

9         A    No, Your Honor.

10        Q    And, just about the sleeping pill, that was

11   just an over-the-counter drugstore kind of sleeping

12   pill?

13        A    Unisom.

14        Q    Unisom, okay.

15             Do you feel that your mind is clear, as you

16   sit here today?

17        A    Yes, Your Honor.

18        Q    Have -- so far, do you have any trouble

19   understanding me?

20        A    No, Your Honor.

21        Q    Okay.

22             THE COURT:  Had -- Mr. -- I'm sorry,

23   McInnis, right?

24             MR. McINNIS:  Yes.

25             THE COURT:  Let me write it down, so I

1    remember.

2            Mr. McInnis, have you discussed with your

3    client his decision to plead guilty?

4            MR. McINNIS:  Yes, I have.

5            THE COURT:  And, in your view, does he

6    understand the rights that he would be waiving by

7    doing so?

8            MR. McINNIS:  Yes, he does.

9            THE COURT:  Do you have any question, as

10   his -- as to his competency to proceed today?

11           MR. McINNIS:  None.

12           BY THE COURT:

13   Q    Mr. McFadden, you have the right to counsel,

14   obviously, and you have the assistance of Mr. McInnis.

15           THE COURT:  Mr. McInnis, are you retained

16   or appointed?

17           MR. McINNIS:  Appointed, Your Honor.

18   Q    All right.  Well, so the Court has appointed

19   Mr. McInnis to -- to represent you, and I understand

20   that he is an experienced criminal defense lawyer.

21           Are you satisfied with the assistance that

22   you have obtained thus far from him?

23   A    Yes, Your Honor.

24   Q    Do you feel you need any more time to

25   discuss anything with him, before proceeding?

1          A     No, Your Honor.

2          Q     All right.  Now, you should understand that

3     I'm what's called a Magistrate Judge.  The case is

4     assigned to what's called a District Judge, which is a

5     higher level of Judge, who is appointed by the

6     President for life.  That's Judge Spatt.

7               Now, Judge Spatt has referred this matter to

8     me, but you have the right to have this proceeding

9     take place before a District Judge.  Now, if you

10     consent, we'll go forward.  But, if not, there's, you

11     know, no problem.  We'll wait until Judge Spatt is

12     available, and you can proceed before him?

13               Do you understand that?

14          A     Yes, Your Honor.

15          Q     Do you consent to having this proceeding

16     happen before me?

17          A     Yes, Your Honor.

18          Q     All right.  Now, if you'll bear with me for

19     a moment, I have to discuss a matter with the

20     Prosecutor, to ask him about compliance with the

21     statute that gives certain rights to crime victims.

22               THE COURT:   Mr. Ferazani, could you just

23     place on the record what steps you've taken to notify

24     victims in this case?

25               MR. FERAZANI:   Our office has identified

1    the victims of Mr. McFadden and his co-conspirators'

2    crime.  We have notified those victims of the pending

3    action, and provided them with an access code that

4    permits them to access this -- a Website and also a

5    telephone database, that will inform them of pending

6    pleas, hearings, et cetera.  We have placed notice of

7    this plea on the -- on that system, but it was placed

8    on the system this morning, Your Honor.

9           THE COURT:   Right, and that's because

10   they're, obviously, faced with a trial starting next

11   week.  There wasn't time to do anything further?

12          MR. FERAZANI:   That's correct, Your Honor.

13   We were scheduled to pick a jury next week, and we've

14   just agreed upon a resolution last evening.

15          THE COURT:   All right.  Notwithstanding

16   that, are you aware of any victim who has expressed a

17   desire either to attend or to be heard?

18          MR. FERAZANI:   No, Your Honor.

19          THE COURT:   And, I'll -- just in case there

20   is anyone present, is there any victim present in the

21   courtroom who wishes to be heard, as to this plea?

22          [No response.]

23          THE COURT:   All right.  I don't hear any.

24          Now, Mr. McInnis, I don't know if you've

25   discussed this with Mr. Ferazani.  Because the docket

1    reflects that there may be a speedy trial issue here,

2    before proceeding with the plea, I'm going to ask your

3    client about whether he'd waive his rights under the

4    Speedy Trial Act, as well.

5          Do you have any problem with that?

6          MR. McINNIS:   No, I have discussed it with

7    Mr. Ferazani.  I have also discussed it with my

8    client.

9          THE COURT:   Okay, very good.

10         BY THE COURT:

11    Q    Mr. McFadden, what I've just been discussing

12   with your attorney, you have -- you have the right

13   and, in fact, the law requires that the trial of the

14   charges against you start with seventy days of your

15   first appearance to answer the charges.

16         Do you understand that, so far?

17    A    Yes, Your Honor.

18    Q    Now, it looks to me, from the -- from the

19   official docket of this case, that more than seventy

20   days have passed since you've answered the charges.

21   Now, the law allows a certain time to be excluded, and

22   it has been.  But, even with that, it looks like more

23   than seventy days have passed.

24         It may be because some time was excluded,

25   and the docket just doesn't reflect that.  I don't

1    know.  But, to be on the safe side, I want to make
2    sure you understand your rights.

3         Where -- where more than seventy days pass
4    before the trial -- seventy days that count, that is
5    -- you can ask to have the charges dismissed.  And, if
6    you ask that, the Judge, if -- if he agreed that more
7    than seventy days have passed, would have to dismiss
8    the charges against you.

9         If that happened, the Government would have
10   the right to try and reinstate the charges.  If it
11   tried -- you know, it may or may not try to do that,
12   if the case were dismissed.  And, if it tried, it may
13   not -- it may not succeed in getting the charges
14   reinstated.

15        So, you know, we could end up in this exact
16   same position we're in today, or we could end up with
17   no charges being filed against you at all.

18        Do you understand that?

19   A    Yes, Your Honor.

20   Q    If we're going to proceed today, it's only
21   because you've consented to waive your right to have
22   the case dismissed, on the grounds that the trial
23   didn't start fast enough.  And, you'd also be waiving
24   your right to appeal to a higher court that they
25   should throw out any conviction because the trial

1    didn't start soon enough.

2            Do you understand that?

3    A    Yes, Your Honor.

4    Q    Are you willing to waive your right to ask

5    to have the case dismissed on speedy trial grounds?

6    A    Yes, Your Honor.

7    Q    And are you also willing to waive your right

8    to appeal to a higher court on the grounds that the

9    case should have been dismissed on those grounds?

10   A    Yes, Your Honor.

11   Q    All right.  Very good.

12           MR. McINNIS:   Your Honor, just to make the

13   record --

14           THE COURT:   Yes.

15           MR. McINNIS:   -- complete, he may not even

16   have that right because, in fact, there may have been

17   a tolling that was in place.  I have been, I think, at

18   all the prior proceedings, and it's my recollection

19   that at each one, Judge Spatt asked the attorneys to

20   consent to a waiver of the Speedy Trial Act, and

21   that's my recollection that I sit here right now, that

22   that, in fact, happened.

23           THE COURT:   Yeah, no.  I understand that.

24   I appreciate you -- you making that record.  The

25   reason I do this is because it -- at least as far as

1    the docket reflects, it appears that a hundred and

2    thirty-two days have passed, of non-excludable time.

3         It may be that the docket simply doesn't

4    reflect all of the orders.  But so -- so that there's

5    no question later, I wanted to go over that with your

6    client.

7         BY THE COURT:

8    Q    All right, now, Mr. McFadden.  Let me

9    describe to you the charge that's against you, to

10   which you propose to plead guilty, and make sure that

11   you understand what the Government would have to do to

12   prove that you're guilty.

13        The charge is called securities fraud.  And,

14   to prove you guilty, the Government would have to

15   prove that you were involved in -- in a scheme, either

16   yourself or together with others, to defraud people,

17   to obtain money or property, you know, by using false

18   statement, or false pretenses, or by withholding

19   information that they should otherwise have gotten, in

20   such a way that they would be deceived.  And to do

21   that, in connection -- in this case, with the sale or

22   purchase of stocks.

23        The Government would have to prove that in

24   doing -- in -- in performing this, in conducting this

25   scheme, that you or anyone else who was involved, used

1     the telephone, or the mails, or the Internet.  And,

2     the victims of this scheme, as charged by the

3     Government, they would have to prove were, you know,

4     somewhere in the United States, perhaps all over the

5     United States.

6               Do you understand that?

7          A    Yes, Your Honor.

8               THE COURT:   Did I miss any elements, Mr.

9     Ferazani?

10              MR. FERAZANI:   No, Your Honor.

11         Q    All right.  Do you feel you understand the

12    charge?

13         A    Yes, Your Honor.

14         Q    Now, you have a right to plead not guilty,

15    as you've already done.  You have a right to plead not

16    guilty to this charge, and to go to trial.

17              Do you understand that?

18         A    Yes, Your Honor.

19         Q    If you plead guilty today, you'll be giving

20    up some very valuable rights.  So, I want you to

21    listen carefully.

22              First of all, you have a right under the

23    Constitution and laws of the United States to a speedy

24    and public trial by jury, with the assistance of your

25    attorney.

1           Do you understand that?

2      A    Yes.

3      Q    At any trial, you would be presumed to be

4  innocent.  You wouldn't have to prove that you're

5  innocent.

6           And that's because, under our system of law,

7  it's the Government that must come forward with proof

8  that establishes beyond a reasonable doubt that you're

9  guilty of the crime charged.  If the Government failed

10  to meet that burden of proof, the jury would have a

11  duty to find you not guilty.

12          Do you understand that?

13     A    Yes.

14     Q    Now also, at the trial, witnesses for the

15  Government would have to come forward to court and

16  testify in your presence.  Your lawyer would have the

17  right to cross-examine the witnesses.  He could raise

18  legal objections to any evidence that the Government

19  tried to offer against you.

20          And, your lawyer could offer evidence in

21  your behalf, if he thought that there was any evidence

22  that would help you.

23          Do you understand that?

24     A    Yes, Your Honor.

25     Q    Now also, at the trial, you would have the

1    right to testify in your own behalf, if you wished to

2    do so.  On the other hand, you could not be forced to

3    be a witness at the trial.

4            And that's because, under our Constitution

5    and laws, no person can be compelled to be a witness

6    against himself.  So, if you wished to go to trial but

7    you chose not to testify, the Judge would instruct the

8    jury that they could not hold that fact against you.

9            Do you understand that?

10    A    Yes, Your Honor.

11    Q    Now if, instead of going to trial, you plead

12    guilty to the crime charged, and if based on my

13    recommendation Judge Spatt accepts your guilty plea,

14    you'll be giving up your right to a trial, and all of

15    those other rights that I've just discussed with you.

16    There will be no trial in this case.  There will be no

17    appeal on the question of whether you did or did not

18    commit -- commit the crime charged.

19            The only thing that you could appeal would

20    be if you thought that I didn't follow the law

21    properly, in conducting this proceeding or, with some

22    possible exceptions, which I'll get to in a moment --

23    or if you thought that Judge Spatt didn't follow the

24    law in imposing sentence.

25            But, with respect to the question of whether

1    you're guilty or innocent, that would be settled for

2    all time.  You wouldn't be able to appeal and say you

3    weren't guilty.

4              Do you understand that?

5         A    Yes, Your Honor.

6         Q    All right.

7              THE COURT:   Is there any waiver of

8    sentencing appeal?

9              MR. FERAZANI:   There is, Your Honor, if the

10   term of imprisonment is sixteen months or below.

11             THE COURT:   You know what?  I'm looking at

12   the wrong document.  I'm sorry.

13             MR. FERAZANI:   Paragraph 4, Your Honor.

14             THE COURT:   Yeah, I know.  I was looking at

15   -- at a different document.  Yes.

16             BY THE COURT:

17        Q    And, the document Mr. Ferazani is referring,

18   to Mr. McInnis [sic] -- McInnis, I'm sorry.  Forgive

19   me.  Mr. McFadden.

20             I have in front of me a six-page document,

21   entitled "United States of America against Patrick

22   McFadden, plea agreement."  And, on the last page, it

23   appears to have Mr. Ferazani's signature, his

24   supervisor's, your signature, Mr. McFadden, and your

25   attorney's.

1           Do you have a copy in front of you?

2      A    Yes, Your Honor.

3      Q    All right.  And, I've got the original

4  marked as Exhibit 1.

5                     (The document referred to was

6                     marked for identification as

7                     Court Exhibit No. 1.)

8      Q    Is that your signature on the -- on the last

9  page?

10     A    Yes, Your Honor.

11     Q    All right.  I'll -- I'll have -- well, let

12  me ask you.  I'll ask you more about this, in a

13  moment.

14          But, just to get back to your rights.  As I

15  said, the issue of your guilt, if you plead guilty,

16  will be done for all time.

17          Do you understand that?

18     A    Yes.

19     Q    Now, if you plead guilty, I'm going to have

20  to ask you certain questions about what it is you did

21  that makes you guilty, so that I can be satisfied that

22  there is a basis for your plea.

23          You'll have to answer my questions and

24  acknowledge your guilt.  That means you'll be giving

25  up your right not to incriminate yourself.

1              Do you understand that?

2         A    Yes, Your Honor.

3         Q    And are you willing to give up your right to

4    a trial, and the other rights that I've been

5    discussing with you?

6         A    Yes, Your Honor.

7         Q    Now, I've mentioned before that -- that

8    document entitled "plea agreement."

9              Is this your -- is this document -- is that

10   your agreement with the Government?

11        A    Yes, Your Honor.

12        Q    Now, I'm not going to highlight it.  I'm not

13   going to discuss one provision rather than another.

14   Because, what you should understand is it's your

15   entire agreement, and every -- every part of it is --

16   is as important as every other.

17             Do you understand that?

18        A    Yes, Your Honor.

19        Q    What I want to know is, first of all, do you

20   understand it?

21        A    Yes.

22        Q    And -- and, I take it you've read the entire

23   agreement?

24        A    Yes, sir.

25        Q    And, have you discussed it with your

1       attorney?

2              A     Yes, Your Honor.

3              Q     When you signed it, by signing the

4       agreement, did you mean to indicate that you

5       understood it, and that you consent to be bound by --

6       by the agreement?

7              A     Yes, Your Honor.

8              Q     All right.  Is there any other promise

9       that's been made to you, other than the promises made

10      in this agreement, is there any other promise that's

11      been made to you by the Government, or on behalf of

12      the Government, that isn't set forth in that

13      agreement?

14             A     No, Your Honor.

15             Q     Okay.  Now, if you're unsure, --

16             A     Yeah, I'm a little --

17             Q     -- ask or -- or talk it over with your

18      attorney.

19                   (Defendant and counsel conferring.)

20             A     No, Your Honor.

21             Q     All right.  The reason I want to be careful

22      about this is, is I don't want there to be any

23      misunderstanding about what the Government has

24      promised you, or what you think the Government has

25      promised you, because I wouldn't want you to come back

1     later and say "I thought the Government was going to

2     do something and they didn't."

3            Because everyone is going to look to this

4     agreement, this written document, as what the

5     Government has promised you to do.  So, if you think

6     there's something else that they have promised, that's

7     not in this agreement, I need to know about it now.

8            Is there?

9     A    No.

10    Q    Okay.  Now, I have to be certain that you

11    understand the potential consequences of -- of

12    pleading guilty.

13           The -- the charge to which you propose to

14    plead guilty -- securities fraud -- carries a maximum

15    term of ten years in prison.

16           Do you understand that?

17    A    Yes, Your Honor.

18    Q    Also, if you are sentenced to prison, you

19    could also be sentenced to a term of supervised

20    release.  And, what that means is that after you leave

21    prison, you could be required to -- to abide by

22    certain conditions for a period of up to three years.

23           And if, during that period of up to three

24    years, you violated any of the conditions of your

25    release, you could be sent back to prison, for up to

1       two years.  And, you wouldn't get any credit for the

2       time previously served.

3              Do you understand that?

4       A    Yes, Your Honor.

5       Q    In addition, you could -- in addition to the

6       prison time, you could also be required to pay a fine

7       of up to a million dollars, or double the amount of

8       loss caused to any victims, or double the amount of

9       gain that you obtained by committing the crime,

10      whichever of those amounts is greatest.

11             Do you understand that?

12      A    Yes, Your Honor.

13      Q    Also, the Judge will have to require you to

14      pay restitution to any victims of the offense.  And,

15      you should understand that the amount of restitution

16      isn't known yet.

17             So, if -- if you don't want to plead guilty

18      without knowing what all of the consequences might be,

19      don't plead guilty, because I can't tell you what the

20      restitution will be in this case.

21             Do you understand that?

22      A    Yes, Your Honor.

23      Q    Do you wish to proceed, anyway?

24      A    Yes, Your Honor.

25      Q    All right.  Finally, the Judge must impose,

1    in addition to everything else, a one hundred dollar

2    special assessment.

3        Do you understand that?

4    A    Yes.

5    Q    All right.  Now, in sentencing you, Judge

6    Spatt is going to have to consider the Federal

7    Sentencing Guidelines.

8        THE COURT:  Mr. McInnis, have you had a

9    chance to discuss those Guidelines with your client?

10        MR. McINNIS:  Yes, I have.

11        THE COURT:  All right.

12    Q    And, Mr. McFadden, have you discussed those

13    Guidelines with your attorney?

14    A    Yes, Your Honor.

15    Q    Tell me, as best -- as best you understand

16    it, what the Federal Guidelines are.

17    A    I could face up to ten years in prison.

18    Q    Um hmm.

19    A    Or probation.

20    Q    Um hmm.  Well, that -- that's the maximum

21    sentence and the minimum, right?  But, the Federal

22    Guidelines, the Sentencing Guidelines, are slightly

23    different.

24        And, if you need some time to discuss it

25    with your attorney, I'll -- I'll certainly wait.

1          But, the Guidelines help a Judge decide

2     where, within that range from zero to ten years, you

3     should be sentenced.  And, essentially, they create a

4     point system that add and subtract aggravating and

5     mitigating circumstances, depending on your conduct,

6     and all of the circumstances in the case.

7          So, the factors that could be considered

8     include, for example, the amount of loss to the

9     victims, your role in the offense, whether a weapon

10    was involved -- and I'm not suggesting that there was.

11    I don't know.  Whether a victim was injured.  Whether

12    any special skill was used in committing the offense.

13    Whether you obstructed justice, or whether you've

14    accepted responsibility for your actions.  Among many

15    other factors.

16         Now, has your attorney -- first of all, do

17    you understand that?

18    A    Yes, I do.

19    Q    All right.  Has your attorney discussed with

20    you what he estimates the Guidelines calculation will

21    be in this case?

22    A    Yes, he has.

23    Q    All right.  And, I see in the plea

24    agreement, that there is also an estimate there, of a

25    range of ten to sixteen months.

1          You've got that estimate.  You've got

2     whatever your attorney estimated for you.  I don't

3     know if the Prosecutor has given you a different

4     estimate.

5          What you should understand is none of those

6     estimates may mean a thing.  The -- they may be right

7     and they may be wrong.  We don't know, yet.

8          Do you understand that?

9     A    Yes, Your Honor.

10    Q    All right.  Now, in addition, you should

11    understand that under a recent Supreme Court decision,

12    the Sentencing Guidelines range, you know, that ten to

13    sixteen months, or whatever the range turns out to be

14    -- that range isn't mandatory.  In other words, the

15    Judge will have to consider the Sentencing Guidelines

16    range, but he won't be required to impose a sentence

17    within that range.

18         And, after considering the Guidelines range,

19    the Judge will also have to consider other factors.

20    He'll have to consider the factors that include the

21    nature and circumstances of the offense, and your

22    history and characteristics.  But, he'll also need to

23    consider the need for the sentence to reflect the

24    seriousness of the offense, to promote respect for the

25    law, and to provide just punishment for the offense.

1          He'll also have to consider the need for a

2     sentence to provide deterrents to other criminal

3     conduct, and to protect the public from further crimes

4     by you.  If you cooperate with the Government, then

5     under certain circumstances, the Judge will have to

6     take that into account, as well.

7          And, he'll have to take all these things

8     into consideration, and come up with a sentence that's

9     reasonable, after considering the Sentencing

10    Guidelines range and these other circumstances that

11    I've discussed with you.

12         Do you understand, so far?

13    A    Yes, Your Honor.

14    Q    Now, you're going to have to report to the

15    probation officer and -- who will ask you questions

16    about your entire life, from the time that you were

17    born, with regard to any criminal history you may

18    have, your employment, marriages, divorces, children,

19    sickness, military service, Boy Scout service,

20    charitable work, religious activities, and everything

21    else in your life.

22         And then, the Probation Department will give

23    the Judge a pre-sentence report.  And, you'll see it,

24    as well.  And, in that report, they'll review the

25    sentencing guidelines and all the factors, and they'll

1    recommend to the Judge a point level and a sentencing

2    range which, as I've told you, isn't mandatory, but

3    which the Judge must consider.  And, that sentencing

4    range will be set forth in terms of months.

5              Now, when you see that report, you may have

6    had your mind set on ten to sixteen months, or some

7    other amount, but the recommendation in the report may

8    be for a longer period.  And, if that's the case, you

9    won't be happy.

10             But, one thing that you won't be allowed to

11   do at that point is withdraw your guilty plea simply

12   because you don't like the sentence that it

13   recommends.

14             Do you understand?

15        A    Yes, Your Honor.

16             MR. McINNIS:   Your Honor, --

17        Q    So, what I'm telling you now is that nobody

18   knows what the Sentencing Guidelines recommendation

19   will be.  Nobody knows what a reasonable sentence will

20   be.  Nobody knows what sentence the Judge will

21   actually impose.

22             So, if you want to -- if you want to avoid

23   uncertainty as to any of those matters, don't plead

24   guilty.

25             Do you understand?

1        A     Yes, Your Honor.

2        Q     Do you wish to proceed?

3        A     Yes, Your Honor.

4        Q     All right.

5              MR. McINNIS:   Your Honor, could I say

6     something about the estimate?

7              THE COURT:   Yes.

8              MR. McINNIS:   As you can see from the plea

9     agreement, the Government estimates a level twelve, --

10

11             THE COURT:   Yes.

12             MR. McINNIS:   -- and one of the things that

13    that's based on is an inclusion of two levels for use

14    of sophisticated means to commit the offense.

15             THE COURT:   Um hmm.

16             MR. McINNIS:   And the -- I've told the

17    Government, and I think that they are anticipating,

18    that we may be making a motion at the time of

19    sentencing that that would not apply in this case.

20    And, they may or may -- they may or may not agree with

21    that, or they may take a contrary position.

22             But, I just wanted the record to reflect

23    that, as of today, Mr. McFadden is planning on, in

24    effect, challenging that.  And, by doing that, he is

25    not in any way diminishing his acceptance of

1    responsibility.  It's just a legal right that I have

2    asked to preserve on his behalf.

3           THE COURT:  All right.  Is it your

4    understanding, Mr. Ferazani, that Mr. McFadden retains

5    that right?

6           MR. FERAZANI:  Yes, Your Honor.

7           THE COURT:  All right.

8           MR. McINNIS:  And, there was one other

9    thing, as well.

10          THE COURT:  Yes.

11          MR. McINNIS:  The -- I'm sorry.

12          THE COURT:  That's okay.

13          MR. McINNIS:  The plea agreement also

14    provides that Mr. McFadden make a motion for a

15    downward departure from the Sentencing Guidelines, and

16    that the U.S. Attorney's Office will not be filing

17    anything in opposition to that motion.

18          THE COURT:  All right.  That's fine.  And,

19    you know, just so it's clear.  I've made the plea

20    agreement, in its entirety, an exhibit -- Exhibit 1

21    for these proceedings.  And, all of its -- all of its

22    provisions control here.

23          But again, Mr. Ferazani, to the extent that

24    Mr. McInnis has referred to one portion of it, do you

25    agree with his characterization?

1          MR. FERAZANI:   Your Honor, that's
2   specifically outlined in Paragraph 5(b), yes.
3          THE COURT:   All right, very good.
4          BY THE COURT:
5     Q    Now, getting back to the question I had, and
6   you may have answered it, but I'm not certain.
7          As I said, if you want to avoid any
8   uncertainty or all uncertainty -- about what a
9   reasonable sentence will be, what the Guidelines will
10  be, or what your ultimate sentence will be -- you
11  really shouldn't plead guilty, if you want to avoid
12  that uncertainty.
13         If you're willing to proceed, despite that
14  uncertainty, let me know.
15    A    I'm willing to proceed, sir.
16    Q    All right.  Now, as I mentioned, you'll --
17  you will receive a copy of that pre-sentence report
18  that the Probation Department will prepare.  And,
19  you'll have an opportunity to go over it, along with
20  your attorney.
21         Now, if you think the report itself is
22  mistaken or incomplete in any way, you'll have the
23  opportunity to bring that to the Judge's attention.
24         Do you understand?
25    A    Yes, Your Honor.

1      Q    Now, at the time of sentencing, you'll have

2    the right to speak, and your attorney will have the

3    right to speak, and the Prosecutor will.  And also,

4    any victims who appear may have the right to -- will

5    have the right to speak.  And, all of them may make

6    recommendations as to what the sentence should be.

7            And, I'm confident that Judge Spatt will

8    listen carefully to everything that's said.  But what

9    you have to understand is that the final

10    responsibility for sentencing you is Judge Spatt's,

11    and his alone.  And he may be persuaded by what the

12    attorneys or the victims say, or by what you say.

13    And, he may not.

14            He may also view the case entirely

15    differently, and he may not impose the sentence that

16    anyone has recommended.  He may impose a higher

17    sentence.  So, nobody can promise you today what

18    sentence the Court will impose.

19            Is that clear?

20      A    Yes, Your Honor.

21      Q    Now, after the Judge imposes a sentence, if

22    you or your attorney think that he hasn't properly

23    followed the law in sentencing you, then you can --

24    you can sentence -- you can appeal that sentence to a

25    higher court and ask them to correct any sentence --

1    any mistake that was made in sentencing you, with one

2    very important provision, which is even if there's a

3    mistake in sentencing, if the sentence imposed on you

4    is sixteen months or less, then you can't appeal, even

5    if there's a mistake.

6              Do you understand that?

7    A    Yes, Your Honor.

8    Q    Now, of course, if the sentence is higher

9    than sixteen months, and you think there's been a

10   mistake -- a mistake, then of course you are free to

11   appeal.

12             Do you understand that?

13   A    Yes, I do.

14   Q    All right.  And, you're willing to waive

15   your right to appeal -- to appeal an incorrect

16   sentence below sixteen months or sixteen months?

17   A    Correct.

18   Q    Okay.  Now, do you have any -- any questions

19   that you'd like to ask me about the charge, about your

20   rights, about the possible sentence, the Sentencing

21   Guidelines, what constitutes a reasonable sentence,

22   how sentencing will proceed, or anything else in this

23   matter?

24   A    No, Your Honor.

25   Q    All right.  Because now is the time.  If you

1    have any questions, now is the time.  All right.

2              THE COURT:  Mr. McInnis, is there anything

3    else you'd like me to discuss with your client in

4    further detail?

5              MR. McINNIS:  Just one thing that I wanted

6    to mention, with respect to the charge.  And, my

7    understanding is he's going to be pleading guilty to

8    Count Three, the securities fraud count, which

9    incorporates by reference about twenty-five or twenty-

10   six other allegations from other counts.  And, if he

11   does plead guilty to that, the Count Three, he's not,

12   in effect, pleading guilty to each of those

13   allegations.

14             THE COURT:  I'm not certain about that.

15   And, Mr. Ferazani, I'd like your input.

16             MR. FERAZANI:  One moment, Your Honor?

17             (Pause)

18             MR. McINNIS:  Just, if I could elaborate,

19   while -- so that -- so that everyone understands the

20   context?

21             For example, there are counts -- there are

22   allegations that say that there was a conspiracy, and

23   it took place from 1999 to 2002.  Well, Mr. McFadden

24   was only at that place of employment for four months,

25   in 2002.  He has nothing to do with activity that

1    happened in '99, 2000, 2001, and so on.

2             There are allegations that concern other

3    securities, other than the Classica security which is

4    the core of Count Three.  And, there are also

5    allegations about things like money laundering

6    activities.

7             So, those allegations formally are

8    incorporated into Count Three, in Paragraph 30, but

9    it's my understanding that Mr. McFadden is going to be

10   pleading guilty to securities fraud for having

11   received excessive commissions that were not properly

12   disclosed to the customer, but not the other

13   allegations in the --

14             THE COURT:   All right.  Mr. McInnis, look,

15   the -- the indictment says what it says.  And, I'm

16   sure you've negotiated hard on behalf of your client.

17   And obviously, you are not in a position -- your

18   client isn't in a position -- isn't in a position to

19   say whether things attributed to others are true or

20   not.

21             But, Count Three does incorporate those

22   other -- those other allegations.  Now, Mr. Ferazani,

23   what's the Government's position on -- as to whether,

24   by pleading guilty to Count Three, Mr. McFadden, you

25   know, pleads guilty to the entirety of the -- of the

1     charge, and all the allegations made in support of it?

2          MR. FERAZANI:   Well, to the extent that

3     Paragraphs 1 through 24 merely outline facts and

4     background of Donald and Company, as -- as Mr. McInnis

5     outlined, regarding its existence prior to Mr.

6     McFadden attending or joining the firm, Mr. -- the

7     Government's agreement under the plea agreement is to

8     dismiss Counts One, Two, and Four, to the extent Mr.

9     McFadden even was charged, --

10          THE COURT:   Mr. McFadden isn't charged --

11          MR. FERAZANI:   -- in the money laundering

12     conspiracy.

13          THE COURT:   -- in Count Four.

14          MR. FERAZANI:   Right.

15          THE COURT:   I don't think.

16          MR. FERAZANI:   The -- I guess the issue is

17     Paragraph 20, and the language in Paragraph 20 charges

18     Mr. McFadden, with the other co-conspirators who have

19     pled guilty, to engaging in the scheme to manipulate a

20     House Stock -- one of the House Stocks -- in this

21     case, the only one attributable to Count Three is the

22     Classica Group -- by five methods.

23          To the extent Mr. McFadden is only admitting

24     to or is going to articulate to Paragraph -- to the --

25     accepting unauthorized commissions, or excessively

1     high commissions that are not being described to the

2     customers, he may, during his allocution, if he wants

3     to specifically deny the remaining sections of

4     Paragraph 20, I am not opposed to that, depending on

5     what his allocution is.

6           THE COURT:   All right.   The reason I want

7     to be careful about this is because I know there's

8     case law that says, essentially, you plead guilty to a

9     count, you admit the count.

10          Now, it may have absolutely no bearing on

11    practically what happens in this case.   And not admit

12    in the sense that you necessarily agree it's true.

13    But it means you don't contest it.   And, you know,

14    with respect to conduct not attributed to you, you

15    don't need to.

16          But, if you're concerned about the

17    implications of pleading guilty to a charge that

18    contains these allegations, then maybe you should

19    negotiate, you know, something -- something else.

20    Perhaps filing of an information.   I leave that up to

21    you.

22          But, to the extent that you're concerned,

23    then you shouldn't plead guilty, Mr. McFadden, because

24    of what the law might think you are admitting by

25    pleading guilty, that is in addition to the specific

1     facts that you say you did, I'm not going to advise

2     you.  I'm just going to say, you know, then you --

3     then you live with that uncertainty.

4            So, I'll leave it to you, if you want to

5     talk it over with your counsel about how to proceed.

6            MR. McINNIS:   Yeah, could we have a second,

7     Your Honor?

8            THE COURT:   Sure, yeah.

9            MR. McINNIS:   I may also need to talk to

10    Mr. Ferazani.

11           THE COURT:   Yeah.

12           [TAPE STOPPED AND STARTED.]

13           MR. McINNIS:   Mr. McFadden, some of them

14    have what we just referred to between ourselves as --

15    as kind of a laundry list of things that were done by

16    some of the other Defendants, and not Mr. McFadden.

17    But, I think that there is a crystal clear

18    understanding between me and Mr. Ferazani, as to which

19    of those things in the laundry list Mr. McFadden is

20    responsible for.  And that if he today, or in his

21    discussions with Probation, allocutes to those things,

22    but denies the other, again, that he's not going to be

23    losing acceptance of responsibility under the plea

24    agreement.

25           THE COURT:   Is that your understanding?

1          MR. FERAZANI:   If -- if I may, Your Honor?

2          Specifically referencing the Paragraph 20,

3    --

4          THE COURT:   Yes.

5          MR. FERAZANI:   -- which outlines the

6    conduct collectively of the named Defendants in the

7    indictment, the conduct (a) -- that is listed as (a)

8    through (f), which --

9          THE COURT:   Yes.

10          MR. FERAZANI:   -- makes up the overall

11    scheme, clearly Mr. McFadden was one component to the

12    scheme, and the Government concedes that, for the

13    purposes of this plea, the Government would be able to

14    -- to prove, and Mr. McFadden is going to allocute

15    sub (e) and sub (f) as his portion.

16          Sub (e) and sub (f), when one cross-

17    references that with Count Three, it's consistent with

18    the charge, and also it will make out a -- a legally

19    sufficient plea.  In fact, the fact that the devices,

20    scheme, and artifice to defraud in this case is Mr.

21    McFadden, as the broker, accepting excessive

22    commissions which he failed to disclose to his

23    clients.  And, those would be the statements of

24    material fact, and omission of those material facts.

25    And, that was the act, practice, and course of

1    business which was a deception to his clients.

2            So therefore, Your Honor, I believe that the

3    facts that Mr. McFadden will allocute to will be

4    sufficient for Paragraph -- for Count Three.  And, to

5    the extent (a) through (d), in Paragraph 20, are not

6    facts that Mr. McFadden is going to allocute to, I

7    don't think that is going to affect this plea.

8            THE COURT:   All right.  So, while

9    Paragraph 20 talks about conduct engaged in by a

10   number of people, it's the Government's position that,

11   to the extent it refers to Mr. McFadden, sub-parts (d)

12   and (e) --

13           MR. FERAZANI:   Correct, Your Honor.

14           THE COURT:   -- refer to him, and these

15   remaining sub-parts simply refer to others.

16           MR. FERAZANI:   Correct, Your Honor.

17           THE COURT:   Okay.  Mr. McInnis, is that

18   your understanding?

19           MR. McINNIS:   Exactly, Your Honor, and --

20           THE COURT:   Okay.

21           MR. McINNIS:   -- thank you for allowing us

22   to do that.

23           THE COURT:   Very good.

24           BY THE COURT:

25       Q    Mr. McFadden, do you have any questions?  I

1    know this is -- there's a lot of technical stuff we've

2    been talking about here, but do you have any questions

3    about that?

4                    (Pause)

5                    MR. McINNIS:   Do you have any questions?

6            A    Could I just briefly --

7            Q    Yes, please.  Yeah.

8                    (Defendant and counsel conferring.)

9                    MR. McINNIS:   We're ready, Your Honor.

10   Thank you.

11                   THE COURT:   All right.

12                   MR. McINNIS:   Thank you.

13           A    (Continuing.)  I am -- I am ready, Your

14   Honor.

15           Q    And no -- any further questions?

16           A    No, sir.

17           Q    All right.  Now -- and, I just want to make

18   sure you understand, because I will answer any

19   questions you have, if you need them answered before

20   you decide whether to plead guilty.

21           A    I'm okay, sir.

22           Q    All right.

23                   THE COURT:   Mr. McInnis, do you know of any

24   reason why your client should not plead guilty to

25   Count Three?

1              MR. McINNIS:   No.

2              THE COURT:   And are you aware of any viable

3    legal defense to the charge?

4              MR. McINNIS:   No.

5              BY THE COURT:

6         Q    Mr. McFadden, are you ready to plead guilty

7    to Count Three of the indictment?

8         A    Yes, Your Honor.

9         Q    And, how do you plead to the charge

10   contained in Count Three of the indictment, guilty or

11   not guilty?

12        A    I plead guilty, Your Honor.

13        Q    And, are you making this plea of guilty

14   voluntarily, and of your own free will and accord?

15        A    Yes, Your Honor.

16        Q    Has anyone threatened you or forced you to

17   plead guilty?

18        A    No, Your Honor.

19        Q    Other than the agreement with the Government

20   in the -- in the plea agreement document that we've

21   been discussing, other than that, has anyone made you

22   any promise that has caused you to plead guilty?

23        A    No, Your Honor.

24        Q    Has anyone made you any promise about the

25   sentence that you'll receive?

1          A     No, Your Honor.

2          Q     And, of course, nobody could make you such a

3     promise because, as I've now told you several times,

4     only Judge Spatt has the ability to decide on the

5     proper sentence in this case.

6                Do you understand that?

7          A     Yes, Your Honor.

8          Q     Now, tell me briefly, in your own words,

9     what you did that makes you guilty of Count Three of

10     the indictment.

11          A     Here's what I did that makes me guilty.

12     From February of 2002, until June, 2002, I was a

13     Registered Representative at the Garden City branch of

14     Donald and Company.

15          Q     Mr. McFadden, I'm sorry.

16          A     I'm sorry.

17          Q     Slow down.  I know this is a difficult

18     moment for you.  Slow down.  Speak clearly.  And --

19     and, tell me what you did.

20                (Pause)

21          A     From February of 2002, until June, 2002, I

22     was a Registered Representative at the Garden City

23     branch of Donald and Company, a Registered

24     Broker/Dealer.

25                During that time, I bought for some of my

1    customers shares of a company called the Classica

2    Group, Inc..  Classica -- Classica's shares traded on

3    the NASDAQ market.  Donald was a market maker in

4    Classica.

5         Q    I'm sorry.  You said a "market maker"?

6         A    A market maker, yes.

7         Q    Okay.  Go ahead.

8         A    I received -- Donald was a market maker in

9    Classica.  I received commissions from Donald for

10   buying and selling Classica for my customers.

11             I admit that, on occasions, the amount of

12   commissions I received on Classica were significantly

13   greater than the amount that my customers thought I

14   was receiving.  And, I admit that I know or suspect

15   that my customers were deceived as to true amount of

16   commissions I was receiving for Classica.

17             For example, on February 25th, 2002 --

18   excuse me.

19             (Pause)

20        A    (Continuing.)  On February two thousand

21   twenty-five, I bought ten thousand shares of Classica

22   for a customer, and I received twenty-three cents a

23   share -- twenty-three hundred dollars in commissions.

24   This sale was the result of a phone call.  I knew or

25   suspected that my customer was in Ohio.  I believed

1    that I was getting -- he believed he was getting much

2    less than twenty-three cents a share.  He most likely

3    thought I was getting -- he was getting one cent or

4    less.

5            I knew at the time I was buying Classica

6    that a customer wants to know and was entitled under

7    the law to know the amount of commissions he was

8    actually paying.  And, I know that I was wrong to

9    deceive or allow a customer to be deceived as to the

10   true amount of commissions on a transaction.

11           In conclusion, I know at that time I was

12   committing a form of securities fraud by receiving

13   commissions on the Classica that were far in excess

14   for the amount that my customers knew about.

15           (Pause)

16       A    (Continuing.)  I also admit that a cross on

17   one trade in Classica.  This is why I pleaded guilty

18   on the Count Three of the indictment.

19       Q    Okay.  Thank you, sir.  Are you finished?

20       A    Yes.

21       Q    All right.

22           THE COURT:   Mr. Ferazani, do you think

23   there is anything further I need to elicit?  I

24   understand there is some pronoun issue about who

25   understood what, with respect to the -- the

1    commissions, but I understood it, certainly.  I think
2    the record is clear.  Anything --

3            MR. FERAZANI:    I think the record was clear
4    when he stated that he believed or suspected that his
5    clients were misled as to the amount of commission.

6            THE COURT:   All right.  Anything further
7    that you wish to have me elicit?

8            MR. FERAZANI:   No, Your Honor.

9            THE COURT:   And, do you wish to put on the
10   record anything further about what the Government
11   would prove if there were a trial in this case?

12           MR. FERAZANI:   No, Your Honor.

13           THE COURT:   Is there anything further you
14   think I should cover, to satisfy the requirements of
15   Rule 11?

16           MR. FERAZANI:   No, Your Honor.

17           THE COURT:   Mr. McInnis, is there anything
18   further that you'd like me to go over, to make sure
19   that I have satisfied the requirements of Rule 11?

20           MR. McINNIS:   No, Your Honor.

21           THE COURT:   All right.  Based on the
22   information that has been given to me, and that has
23   occurred in court, I find that -- that Mr. McFadden is
24   proceeding with a clear head, that he understands his
25   surroundings and is competent to proceed.

1           I find that he is acting voluntarily.  I

2     find that he fully understands the charge against him.

3     That he understands his rights, fully understands his

4     rights, and also the consequences of his plea.

5           I further find that there is a factual basis

6     for his plea.  And, subject to concerns I have about

7     the Government's compliance with the Crime Victims

8     Rights Act, about which I will make a separate

9     recommendation to the Court, I do find that there is

10    factual basis, and I will recommend, with that

11    condition, that the Court accept Mr. McFadden's plea

12    of guilty to Count Three of the indictment.

13          Mr. Ferazani, what's the Defendant's

14    condition -- status, with respect to bail?

15          MR. FERAZANI:   He is out, on a secured

16    bond.

17          THE COURT:   Is there any suretor of that

18    bond?

19          (Counsel conferring.)

20          THE COURT:   Mr. McInnis, just --

21          MR. McINNIS:   You're a co-signer?

22          THE COURT:   All right.

23          MR. McINNIS:   Yeah, his wife is a co-

24    signer.

25          THE COURT:   All right.  Ma'am, I -- and,

1    just for the record, I'm speaking to -- I take it

2    you're Mr. McFadden's wife?  All right.  And, I'm

3    speaking to Mr. McFadden's wife, who is in the

4    gallery.

5            Before approving continuing Mr. McFadden on

6    bail, because the law changes once he's entered a plea

7    of guilty, I just want to make sure that -- that Mrs.

8    McFadden is content to remain a suretor on the bond.

9            Are you, ma'am?

10           MRS. McFADDEN:   Yes.

11           THE COURT:   All right.  And, she's

12   indicated she is.

13           Mr. Ferazani, you -- do you concur that

14   continuing Mr. McFadden on bond will, by clear and

15   convincing evidence, secure the safety of the

16   community and his return, as required?

17           MR. FERAZANI:   Yes, Your Honor.

18           THE COURT:   All right.  I will order that

19   he continue on -- on bond, as -- as previously

20   ordered.

21           Now, I don't have a sentencing date to give

22   you.  I'll ask you to get in touch with Mary Ellen in

23   Judge Spatt's chambers on Tuesday, to arrange a

24   sentencing date.

25           Is there anything else, folks?

1          MR. FERAZANI:   No, Your Honor.

2          MR. McINNIS:   No, Your Honor.

3          THE COURT:   All right.  Thank you, all.

4          (Whereupon, the proceeding was concluded.)

5                    * * * * *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, JUNE ACCORNERO, do hereby certify that I typed the preceding minutes of a hearing held on September 1, 2005, in the matter of UNITED STATES OF AMERICA V. PATRICK McFADDEN, Criminal Docket No. 2:04-cr-00455-ADS-9, before Magistrate Judge James Orenstein, in the United States District Court for the Eastern District of New York, Central Islip, New York, from tapes recorded, duplicated, and provided by the court, and that this is as a accurate a transcript as possible of the contents of those tapes, to the best of my ability, based upon the quality of the recording provided.

JUNE ACCORNERO, transcriber

TANKOOS REPORTING CO., 142 Willis Avenue, Mineola, NY
(516) 741-5342    (212) 349-9692